**Criminal law ⊜1144(14) — Presumption in favor of ruling in failing to charge prevails in absence of record showing to contrary.**

In the absence of matters in the record to the contrary, the presumption in favor of the correctness of the court's ruling in failing to charge on the law of accomplice testimony and circumstantial evidence prevails.

Appeal from Criminal District Court, Dallas County; Robert B. Seay, Judge.

Ray Bolton was convicted of burglary, and he appeals. Judgment affirmed.

Alvin M. Owsley, Asst. Atty. Gen., for the State.

MORROW, J. Conviction is for burglary. There is no statement of facts.

Bill of exceptions complaining of the failure of the court to charge on the law of accomplice testimony and circumstantial evidence are in the record, but are accompanied by no facts enabling the court to determine whether they are applicable or not. In the absence of matters in the record to the contrary, the presumption in favor of the correctness of the court's ruling prevails.

The judgment is affirmed.

---

## ULOTH et ux. v. MOODYMAN et al. (No. 7963.)

(Court of Civil Appeals of Texas. Galveston. Dec. 21, 1920. Rehearing Denied Jan. 6, 1921.)

**Estoppel ⊜92(2)—Heirs accepting deeds estopped to claim lots saved for minor heir.**

Where a mother with the consent of her children deeded lands to them, excepting one who was a minor, saving certain land for him, and later their father was discovered to be the real owner, and he consented to the deeds and made deeds to them granting same property, taking notes from the children, they to be reimbursed by his will for amounts paid on the notes, *held*, that the grantee heirs subsequent to the father's death were estopped to claim title to the lots set apart, but not deeded to such minor, they having been reimbursed.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by John Uloth and wife against A. Moodyman and others, and from that part of the judgment in favor of the defendant Warner Moodyman, the plaintiffs and the defendants John McNew and wife appeal. Affirmed.

Van Velzer & York, of Houston, for appellants.

Atkinson & Atkinson, of Houston, for appellees.

LANE, J. This suit was instituted by John Uloth and wife, Lizzie Uloth, against Alonzo Moodyman, Warner Moodyman, and John McNew and wife, Mattie McNew. They alleged that plaintiff Lizzie Uloth and defendants Alonzo Moodyman, Warner Moodyman, and Mattie McNew are each the owners of a one-fourth undivided interest in certain lots in blocks 1 and 2, including lots 2 and 5, block 1, of the Moodyman addition to the city of Houston, said interest being subject, however, to certain equities of Lizzie Uloth and Mattie McNew therein by reason of the terms of the will of Charles Moodyman, deceased. They pray for partition and adjustment of equities, etc.

Alonzo Moodyman and Warner Moodyman answered first by general denial, but, further answering, they admit that all the property mentioned in plaintiffs' petition was owned by the parties as alleged, except lots 2 and 5 in block 1. They allege that said lots 2 and 5 are the exclusive property of Warner Moodyman, and pleaded estoppel as against the Uloths and McNews to claim any part of lots 2 and 5. Alonzo Moodyman disclaimed as to all of lots 2 and 5.

Alonzo and Warner Moodyman prayed for such judgment as they should show themselves entitled to under the pleadings and evidence, both in law and in equity.

So far as shown by the record, no answer was filed by either of the McNews, but it is recited in the judgment that they orally adopted the allegations of the plaintiffs.

It was shown that in 1862 one Charles Moodyman was possessed of a certain 6-acre tract of land lying south of and fronting about 150 feet on Washington street in the city of Houston and extending southward therefrom about 600 feet, being a parallelogram and about 150 feet in width and 600 feet in length; that Charles Moodyman married Mrs. Eliza Parker, a widow, on the 18th day of December, 1869; that at the time of said marriage Mrs. Eliza Parker had two children by a former husband, hereinafter referred to as Jones and Roberts; that after the marriage of Charles Moodyman and Mrs. Parker there were born to them four children, to wit, plaintiff Lizzie, who married John Uloth; Mattie, who married John McNew; Alonzo Moodyman, and Warner Moodyman; that, after the marriage of Moodyman and Mrs. Parker, Moodyman built a home on said 6 acres of land, and he and his family resided therein as their home until 1881, at which time he left his wife and children and was not heard of by his family until in February, 1893, at which time they learned that he was liv-

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ing at Giddings, in Lee county, Tex.; that, after the departure of Charles Moodyman in 1881, Mrs. Eliza Moodyman and her children by Charles Moodyman believed the whole of the said 6 acres of land was the property of Mrs. Moodyman; that in 1892 there was about $135 to $140 taxes due on said 6-acre tract, and Mrs. Moodyman was desirous of partitioning said 6 acres among her six children, four by Moodyman, the parties to this suit, and Jones and Roberts, children of a former marriage, she instructed John Uloth, John McNew, and Alonzo Moodyman to have said 6 acres surveyed and platted into blocks and lots, and in accordance with said instructions said land was divided into blocks, lots, streets, and alleys, and a map made thereof in accordance with said survey, as shown below:

This map or plat was made May 12, 1892, filed for record February 20, 1893, and duly recorded on March 20, 1893.

On the 13th day of May, the day after said plat was made, Eliza Moodyman executed deeds by which she conveyed to Uloth and wife, McNew and wife, A. Moodyman,

Jones, and Roberts, respectively, the lots and parts of lots as made by the plat upon which their several names appear. The consideration expressed in each of these deeds was $1 and love and affection, and it is conceded that in executing the same it was the purpose of Eliza Moodyman to partition the greater part of the 6 acres of land, which all parties at that time thought belonged to Eliza Moodyman, among her children, and this purpose was so understood by all of her children, except Warner Moodyman, who was then a minor and residing with his mother in the old residence situated on the land dividing lots 2 and 5, block 1. All these deeds referred to the plat, and the lots conveyed by them were described by lots and blocks as shown by the plat.

Mrs. Moodyman, at the time of having the plat made, intended that Warner Moodyman should be the owner of lots 2 and 5 as shown thereon, subject only to her homestead right, and this intention was understood by Uloth, McNew, and A. Moodyman, and all of them acquiesced therein and took possession of those lots conveyed to them respectively. Warner Moodyman, who was then about 20 years of age, remained with his mother, living in the old home situated as indicated on the plat on the dividing line between lots 2 and 5, block 1. However, shortly after this partition was made, to wit, early in the year 1893, it was learned that Charles Moodyman was alive, that he was living at Giddings, in Lee county, Tex., and that the 6 acres of land was his separate property, and that the only interest Eliza Moodyman had therein was her homestead right. As soon as these discoveries were made, Uloth, McNew, and A. Moodyman went to Giddings, saw Charles Moodyman, told him of the making of the plat and the manner in which Eliza Moodyman had divided the property. All of those parties took the deeds which Mrs. Moodyman had given to them on their visit to Charles Moodyman for the purpose of getting him to sign them. Charles Moodyman refused to sign these deeds, but agreed to and did, on the 18th day of February, 1893, by his deed of that date, convey to John Uloth and wife, John McNew and wife, and A. Moodyman the same property set aside to them by Eliza Moodyman. The consideration expressed in each of such deeds was "love and affection and five notes for $100 each." John Uloth, testifying in reference to these deeds, said:

"I don't know if Mr. Moodyman ever saw the plat, but he saw the description in the deeds, and he said he would make a will, and said that it should be divided equally between his four children, and that those who paid him should be reimbursed for what they paid."

Again:

"After Mrs. Moodyman had this map of the 6 acres made, Mr. Charles Moodyman only con-

sidered it to get the field notes to describe the lots, and the money that we paid to the old man was to be reimbursed out of the remainder of the estate after we got our share."

Again:

"What he wanted was his property left to his four children equally."

John McNew also testified that it was understood that those who paid Mr. Moodyman anything should be reimbursed.

Charles Moodyman refused to convey any part of the 6 acres to either Jones or Roberts, saying that they were the cause of his leaving his home.

On the 1st day of April, 1893, just about one month after he executed the deeds to Uloth and wife, McNew- and wife, and A. Moodyman, Charles Moodyman executed the following will:

"The State of Texas, County of Lee.

"Know all men by these presents: That I, Charles Moodyman, of the county of Lee and state of Texas, being in good health and of sound and disposing mind and memory, do make and publish- this my last will and testament, hereby revoking all wills by me at any time made:

"1st. I direct that all my just debts shall be paid and the legacies hereinafter given shall after the payment of the debts be paid out of my estate.

"2nd. I give to each of my children in equal parts, to wit, Alonzo Moodyman, Lizzie Uloth, née Moodyman, Mattie McNew, née Moodyman, and Warner Moodyman all the property, real and personal, that I may possess at my death, after my just debts are paid.

"With the express understanding that of the amounts of money now due me from my said children, all money paid to me by them on the purchase of certain lots in or near the city of Houston, Texas, they shall be reimbursed out of the estate I own at my death, after my just debts are paid, to the extent only of such payments; and if any of the purchase money of such lots as I may heretofore have sold to any of my said children be not paid, they shall have full credit therefor, only when the children who have paid me any part of their purchase be fully reimbursed to the extent of their payments.

"3rd. I constitute and appoint Alonzo Moodyman and John Uloth my executors without bond of this my will.

"4th. I direct that no action be had in the courts except to prove and record this my will and return an inventory and appraisement of this my estate with a list of claims against said estate:

"In witness whereof I have hereunto set my hand this 1st day of April, A. D. 1893, in the presence of J. L. Rousseau and E. A. Burns, who attest the same at my request.

"Charles Moodyman."

Charles Moodyman died on the 11th day of May, 1896, and his will was duly probated in Lee county.

Warner Moodyman married in 1896, and has continuously lived with his mother in the homestead situated on lots 2 and 5, and was so living at the date of the trial of this case, July 11, 1919.

The value of the several lots was not shown, but John McNew, who married Mattie Moodyman, testified that lot 1, block 1, on which the name of Roberts appears, was worth $2,500 and John Uloth, who married Lizzie Moodyman, testified that he sold a part of what he got for $2,900.

Mrs. Eliza Moodyman testified that she was 86 years of age; that she recognized the plat shown her; that John McNew, John Uloth, and Alonzo Moodyman had the plat made; that all three of them brought the plat to her, and that she supposed that all of them ordered that their names be placed thereon; that Warner's name was put on the plat where she wanted it; that it was her husband's wish for Warner to get the homestead when she died; that Warner was her baby at that time and was to get the homestead when she died; that Warner made his home with her because he was the baby boy and helped her build a chimney and hauled lumber, and that the home place was to be his home; that she gave John McNew a place to build her daughter Mattie a dwelling on, and the first thing she knew he had sold it to George Herman; that it was understood that Warner was to have the lots on which his name appears on the map.

It is also shown that the plaintiff Uloth and defendant McNew paid to Charles Moodyman the sum of $500 each in satisfaction and discharge of the notes given by them to him, and that A. Moodyman paid on his note the sum of $332. We have not undertaken to state all the evidence, but only that which we think tends to support the judgment rendered.

In a trial before the court without a jury judgment was rendered in favor of Warner Moodyman for title to lots 2 and 3, block 1, and also adjudging that Uloths, McNews, and A. Moodyman should be reimbursed for the moneys paid by them, respectively, to Charles Moodyman in the division of lot 1, block 1, which was found to be the property of the four children of Moodyman, each owning one-fourth undivided interest therein, subject to the equities asserted by appellant and A. Moodyman by reason of the payment by them of the several sums of money as hereinbefore stated.

John Uloth and wife and John McNew and wife have appealed from that part of the judgment only which vested title to lots 2 and 5, block 1, in Warner Moodyman.

There is but one assignment, and by it appellants insist, in effect, that said lots 2 and 5 were the property of Charles Moodyman at the time of his death, and that by his will the title to the same passed to his four children, to wit, Lizzie Uloth, Mattie McNew, Alonzo Moodyman, and Warner Moodyman, in equal portions, and therefore the court

erred in adjudging that Warner Moodyman was the sole owner of said lots 2 and 5.

We have reached the conclusion that there was ample evidence to support the findings and conclusions by the trial court:

[1] (1) That at the time Charles Moodyman executed the deeds to John Uloth and wife, John McNew and wife, and Alonzo Moodyman by which he conveyed to them the lots upon which their names appear on the plat, it was mutually agreed and understood by each of them and by Charles Moodyman that the partition made by Eliza Moodyman was to stand, with the exception that Uloth, McNew, and A. Moodyman were each to give Charles Moodyman notes of the value of $500, and that he would make a will providing for reimbursement to them for any moneys they might pay him on said notes out of the lots marked Jones and Roberts, and other lots not partitioned by the plat, after his death.

[2] (2) That all of these parties accepted said deeds under such agreement and understanding, and that; said Charles Moodyman so understanding, he was induced to and did make the will hereinbefore set out.

(3) That, having accepted their several deeds under such understanding and agreement, Uloth and McNew are now estopped to claim any part of lots 2 and 5 set aside to Warner Moodyman; it being shown that the other property of which Charles Moodyman died possessed was of sufficient value to reimburse them for any money paid by them to Charles Moodyman on their several notes.

It is not without some difficulty that we have reached the conclusion above expressed, but it seems to us that to hold, under the facts of this case, that Warner Moodyman was not entitled to lots 2 and 5 in block 1, and that the Uloths and McNews were entitled to an interest therein, would be so shocking to good morals, the rules of equity, and to the simplest principles of justice that we should decline to make it, unless coerced into doing so by cogent and firmly established rules of law. We think the plea of estoppel interposed by Warner Moodyman was amply supported by the evidence.

John Uloth testified in effect that at the time Charles Moodyman executed the deeds at Giddings, on the 1st of April, 1893, by which he conveyed to Uloth, McNew, and Alonzo Moodyman the property set aside to them in the partition made by Eliza Moodyman, he told them that he wanted his property to go to his four children in equal parts, and that he would make a will providing that they should be reimbursed out of the estate left by him for any money they might pay him on their several notes. Charles Moodyman did make such will on the 18th day of May, 1893, and died in 1896, and his will was duly probated, and by the de-

cree rendered in this cause Uloth, McNew, and A. Moodyman have been reimbursed for all payments made by them on their several notes.

This evidence, together with other evidence in the case, we think, was sufficient to support a finding that appellants should be estopped to claim any portion of the property set aside to Warner Moodyman in the partition made by Eliza Moodyman, and, as we think, ratified by Charles Moodyman and appellants at the time he executed the deeds at Giddings. Charles Moodyman is now dead, and could not be heard to speak at the time of the trial for this cause, and it seems to us that it would be unconscionable to allow appellants a share of lots 2 and 5 set aside to Warner Moodyman.

The judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

By motion for rehearing appellant has called our attention to the fact that our original opinion contains the following inaccurate findings: First, that a part of block 2 of the Moodyman addition was involved in the suit; second, that Eliza Moodyman executed deeds to Jones and Roberts; and, third, that Warner Moodyman had continuously lived with his mother in the homestead situated on lots 2 and 5 up to the date of the trial of this cause.

While none of these findings did or could materially affect the issues presented by this appeal, we cheerfully make the following findings:

First. While no part of block 2 was sued for, it was so connected with that involved that it was necessary to frequently refer to the same as was done in the opinion, but the statement that it was part of the property sued for in no way materially affects the issues involved in the appeal.

Second. We inadvertently stated that Eliza Moodyman executed deeds to Jones and Roberts to those parts of blocks 1 and 2 on which their names appear. We are unable to find any evidence to support such statements, but such statements in no way could or did affect the material issues presented by this appeal.

Third. We find that the evidence does show that at the time the deeds from Charles Moodyman to Uloth and others were executed Warner Moodyman was a minor and lived with his mother on lots 2 and 5 until he married in 1896, and that since said time he has lived elsewhere, and that our finding that he resided on lots 2 and 5 up to the date of the trial of this cause is not supported by the evidence, but we do not think that such finding was material or did in any way affect the issues presented by this appeal.

Having made these corrections in our findings, the motion for rehearing is refused.